Carlos L. Juárez, Esq.          SBN 86196
Law Office of Carlos L. Juarez
P.O. Box 2464
Riverside, CA 92516
Phone:   (951) 742-7354
Fax:     (951) 742-7358
E-Mail:  juarezlaw52@yahoo.com

Attorney for Defendant,
JUAN CARLOS CRUZ RAMOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>JUAN CARLOS CRUZ RAMOS<br><br><br>        Defendant, | Case No.: 2:23-CR-00382-FLA-1<br><br>DEFENDANT JUAN CARLOS CRUZ RAMOS' POSITION RE: SENTENCING FACTORS<br><br>DATE:  SEPTEMBER 6, 2024<br>TIME:  9:00 A.M.<br>ESTIMATED TIME: 30 MINUTES |

Defendant Juan Carlos Cruz Ramos, through undersigned counsel, herewith submits his position regarding sentencing.

Dated: August 23, 2024            LAW OFFICES OF CARLOS L. JUAREZ
                                   By/s/ Carlos L. Juarez
                                  Carlos L. Juarez
                                  Attorney for Defendant
                                  JUAN CARLOS CRUZ RAMOS

## INTRODUCTION

From March 2022 to July 20, 2023, this defendant, Juan Carlos Cruz Ramos, his wife and co-defendant Berta Montano Jimenez, and David Cruz Hernandez were involved in a conspiracy to deal and manufacture firearms without a license. Within this conspiracy, the parties unlawfully shipped these firearms from Los Angeles County to Mexico with Cruz-Ramos knowing that he was illegally in the United States. In sum, more than 200 firearms were unlawfully distributed to buyers in Mexico with approximately $100,000 paid across the Mexico-California border using wire transfers payable to family members of the defendants.

Cruz Ramos was arrested on July 20, 2023, and remanded into custody. On August 15, 2023, he made his initial appearance per Rule 5 Transfer from Eastern District of California but remained in continuous federal custody since his July arrest.

### A. The Charges Against Cruz Ramos

On January 31, 2024, an Indictment was filed against the defendants charging them with violations of 18 USC 371: Conspiracy; 18 USC 922(a)(1)(A): Engaging in the Business of Dealing in and Manufacturing Firearms Without a License; 18 USC 922 (e): Delivery of Firearms to Carrier Without Written Notice; 18 USC 922 (g)(5): Unlawful Shipment of Firearms by an Alien; 18 USC 924 (d)(1) and 28 USC 2461 (c): Criminal Forfeiture.

### B. The Plea Agreement

On May 3, 2024, Cruz Ramos pled guilty to Counts 1 and 8 of the eight-count First Superseding Indictment (FSI)) which also names Montano Jimenez and Cruz Hernandez. Cruz Ramos was named in Counts 2,3,4, and 6 of the FSI.

In a written plea agreement, the parties stipulate to a factual basis and agree to the a base offense level of 20 under USSG 2K2.1(a)(4)(B), a 10 level increase for 200 firearms or more under USSG 2K2.1(b)(1)(E), a 1 level reduction for cumulative offenses under USSG 2K2.1(b) and a 4 level increase under USSG 2K2.2(b)(6)(A) as the firearms were sent outside the U.S.

The Government also agreed to recommend up to a three-level acceptance of responsibility pursuant to USSG 3E1.1. and there is no agreement as to the criminal history. The Government further agreed that the defendant be sentenced to the low end of the applicable Sentencing Guidelines range provided that the offense level used by the Court to determine that range is 30 or higher and provided that the Court does not depart downward in offense level or criminal history category.

### C. The Pre-Sentence Report (PSR) and Recommendation Letter

The United States Probation Office issued its Presentence Report on July 26, 2024. In the PSR, the Probation Office's computations mirrored the plea agreement and determined the following: the base offense level was also 20 with a 13-level increase under specific offense characteristics, namely the 200 plus firearms, transportation to Mexico and cumulative offense reduction. A three-

level reduction for timely acceptance of responsibility was then applied resulting in a total offense level of 30.

Cruz Ramos was found to have a criminal history score of three and was therefore in category II. The advisory guideline sentence is 108-135 months. There was no Recommendation Letter made available to defense counsel.

### D. The Government's Position

To date, the Government has yet to file their position with the Court.

### E. The Defendant's Position

The defendant agrees with the Probation Offices computation as it mirrors the plea agreement between Cruz Ramos and the Government. The level calculations within the PSR are correct.

**2 Level Departure under 3553 factors**

Based on significant 3553 factors, Cruz Ramos asks for a 2-level departure which would result in a total offense level of 28. The advisory guideline sentence would be between 87-108 months incarceration

A low-end sentence of 87 months would satisfy the goals of sentencing and would reflect adequate consideration of numerous 3553 factors.  Cruz Ramos acknowledges this is a serious offense and has admitted his misgivings and his role in this scheme. The guideline accounts for the severity of his actions and his conduct as numerous adjustments were applied under the guideline which greatly affect his potential sentence.

### F. The Nature of the Offense

The facts of the case are well known to the Court. Cruz Ramos' conduct in this case was foolish, careless and dangerous to society to say the least. His participation in this offense stems from lifelong economic struggles and it is apparent that upon release from incarceration, he will be deported back to Mexico.

### G. The History and Characteristics of the Defendant

Cruz Ramos' personal history and characteristics are important factors for consideration. The PSR perfectly characterizes his upbringing and it becomes evident that this defendant is simply a poorly educated man from another country who made a series of poor mistakes to engage in illicit and criminal conduct.

Growing up without a father in his life and extremely poor, he spent the first seven years of his life being raised by family members because his mother could not afford to take care of him. At the age of eight, heartbroken and depressed, he ventured out looking for his mother and found her, only to be informed she could still not afford to raise him. This abandonment and rejection had lifelong implications and although he remains in contact with his mother, he didn't have a strong foundation and emotional support growing up in rural Mexico.

It is undisputed and widely reported in the PSR that the defendant was extremely poor; unimaginably so. " Cruz Ramos had a rough upbringing while

residing in Mexico. His makeshift shelter consisted of cardboard boxes and there were days he had no food to eat. Most days, he ate beans along with branches he cut from trees." **(PSR, p. 17)** He also suffered abuse at extreme corporal punishment at the hands of those who raised him as he was disciplined for not doing his chores properly and timely. His grandfather would protect and defend him from his relatives at times and this abuse resonates with Cruz Ramos from time to time.

Cruz Ramos was forced to fend for himself at an extremely young age in horrible situations. Coming to the United States was the only way to escape a horrible social and economic situation. He came here for a better life, not to be a thorn in the side of his community, let alone the judicial system. With a fourth-grade education, his opportunities were slim. He took complete advantage of any opportunity to work and provide for his family.

His employment history is significant and he has been an agricultural worker, construction hand, and laborer for his entire life. His greatest accomplishment is being regarded as a great father and someone who has gone above and beyond his children and extended family. His biggest concern at this point is who will continue to offer the same support to his family in his absence, it has been a lesson clearly learned.

### H. Respect For the Law

Cruz Ramos does not have a criminal history peppered with drug or violent offenses which bodes well for his future success. This was an aberrant incident for which he will serve significant time and be deported back to Mexico. It is agreed and acknowledged that his involvement in this offense was foolish and irresponsible. The environment he grew up in greatly influenced his self-esteem and worthiness, he has taken steps to rectify these issues. Respect for the law starts with respect and love for oneself, Cruz Ramos is learning this and is committed to continuing to resolve esteem and substance issues while incarcerated.

He has significant redeeming values and is a loving father and caretaker whose life has been commitment to working hard and supporting his family. He came to this country to escape poverty and raise and support his family, along the way he acknowledges he made poor decisions to do so. This incident and his status as a recovering addict have left him depressed at times, he is currently working on these issues and is becoming more self-aware. He understands that this will only increase his likelihood of success out of custody and prays the Courts will consider such at the time of sentencing. From the outset, he has done his best to be truthful and forthcoming with all government officials, as well as the Probation Officer during the course of the presentence investigation.

I. **<u>Adequate Deterrence</u>**

As addressed in the PSR, Cruz Ramos suffers from a serious drug addiction to methamphetamine. His use stems back over 20 years and up until his arrest, he was using it daily. Unlike many hard-core meth users, he has not turned into a violent person or engaged in theft crimes. This issue has caused significant problems in his home and greatly impaired his perception leading up to his arrest. The long-term effects have aggravated his bouts of depression and he is learning to develop coping strategies to maintain well-being and to make meaningful lifestyle choices. On this issue, Cruz Ramos has expressed a desire to turn his life around and do some soul searching to better his situation. He is both personable and employable and deserves credit for taking steps to better himself.

Continued success in overcoming this addiction while incarcerated bodes well for him upon release. He has had and will continue to have tremendous support as he is a family man. He understands the value of a hard work ethic and is held in high regard by friends, family and associates. This bodes well for the likelihood of continued success upon judgment. Cruz Ramos is confident that he is on the straight and narrow and readily accepts responsibility for his foolish conduct.

**CONCLUSION**

Cruz Ramos asks for a reasonable sentence of 87 months. This is based on the appropriate level computations and reductions, as well as other significant 3553 factors.

Respectfully submitted,

Dated: August 23, 2024

LAW OFFICE OF CARLOS L. JUAREZ
By /s/ Carlos L. Juarez
Carlos L. Juarez
Attorney for Defendant
JUAN CARLOS CRUZ RAMOS