E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ALEXANDRA SLOAN KELLY (Cal. Bar No. 305811)
THOMAS J. MAGAÑA (Cal. Bar No. 324542)
Assistant United States Attorneys
General Crimes Section
    1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5010/1344
    Facsimile: (213) 894-0141
    E-mail:   alexandra.kelly@usdoj.gov
              thomas.magana@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN CARLOS CRUZ RAMOS, et al.,<br><br>    Defendants. | No. 2:23-CR-00382-FLA-1<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT JUAN CARLOS CRUZ RAMOS<br><br>Hearing Date: September 6, 2024<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the Hon. Fernando L. Aenlle-Rocha |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Alexandra Sloan Kelly and Thomas J. Magaña, hereby files its Sentencing Position for defendant JUAN CARLOS CRUZ RAMOS.

    This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

The government respectfully requests the opportunity to supplement its position or respond to any positions asserted by the defense or the United States Probation and Pretrial Services Office as may become necessary.

Dated: August 23, 2024        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/ *Alexandra Sloan Kelly*
ALEXANDRA SLOAN KELLY
THOMAS J. MAGAÑA
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On at least four separate occasions, defendant Juan Carlos Cruz Ramos ("defendant") and his co-conspirators assembled and shipped over 200 firearms, including AR-15-style firearms, to buyers in Mexico. During the time he engaged in this conduct, defendant did not have a license to manufacture or sell firearms, and he did not have legal status in the United States. For his conduct, the government charged defendant in the First Superseding Indictment with conspiracy to engage in the business of dealing in and manufacturing firearms without a license, in violation of 18 U.S.C. § 371 (count one); engaging in the business of dealing in and manufacturing firearms without a license, in violation of 18 U.S.C. 922(a)(1)(A) (count two); delivering firearms to a carrier without written notice, in violation of 18 U.S.C. 922(e) (counts three through six); and shipping firearms as an alien illegally and unlawfully in the United States, in violation of 18 U.S.C. 922(g)(5) (count eight). (Dkt. 81.) Defendant pled guilty to counts one and eight on May 3, 2024. (Dkts. 107, 115.)

On July 26, 2024, the United States Probation and Pretrial Services Office ("Probation") filed a Presentence Investigation Report. (Dkt. 123 ("PSR").) The PSR calculates a total offense level of 30 and a criminal history category of II, resulting in a Sentencing Guidelines range of 108 to 135 months' imprisonment. (PSR ¶ 98.)

The government agrees with Probation's calculation of the applicable Guidelines range and recommends a low-end sentence of 108 months of imprisonment, a three-year period of supervised release, a

special assessment of $100, and no fine.  The government submits that such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

## II.   DEFENDANT'S CRIMES[1]

Between March 2022 and July 2023, defendant and his co-conspirators engaged in the business of dealing in firearms without a license, and delivered firearms to a carrier without written notice. Among the 200 firearms defendant and his co-conspirators distributed to buyers in Mexico were AR-style and AK-47-style firearms that were capable of accepting 30-round and 40-round capacity magazines.  (PSR ¶ 36.)  At the time defendant assembled, packaged, and sold the firearms, he did not have a license to import, manufacture, deal, or sell firearms.  He knew his conduct was unlawful.  And he knew that he was an alien illegally and unlawfully present in the United States, and in fact, had been removed nine times from the United States between 2000 and 2016.

Specifically, at least four times, defendant and his co-conspirators assembled AR-15-style firearms, concealed the firearms in packages for shipments, brought the packages to freight forwarding companies in Los Angeles County, and elsewhere, and shipped the firearms packages to buyers in Mexico.  For each firearms shipment, defendant and his co-conspirators knew the packages contained firearms, but did not provide written notice of that fact to the freight forwarding companies.  Defendant and his co-conspirators negotiated the sale of these firearms in exchange for payments.  In

---

[1] Unless stated otherwise, all facts are based on paragraph 15 of the Plea Agreement (see Dkt. 107).

2

total, they unlawfully distributed more than 200 firearms to buyers in Mexico.

### III. PROBATION'S OFFENSE LEVEL CALCULATIONS

#### A. Offense Level

In the PSR, Probation submitted the following Sentencing Guidelines calculations:

| Conspiracy to Engage in the Business of Dealing in Firearms without a License & Shipment of Firearms By an Alien ||
|---|---|
| Base Offense Level:  [U.S.S.G. § 2K2.1(a)(4)(B)] | 20 |
| 200 Or More Firearms:  [U.S.S.G. § 2K2.1(b)(1)(E)]  Cumulative Offenses  [U.S.S.G. § 2K2.1(b)] | +9 |
| Outside U.S.  [U.S.S.G. § 2K2.1(b)(6)(A)] | +4 |
| Acceptance of Responsibility  [U.S.S.G. § 3E1.1] | -3 |
| **Total Offense Level** | 30 |

(PSR ¶¶ 35-54.) Initially, the government notes that in the plea agreement, the parties stipulated to the base offense level of 20, the +10 enhancement for 200 or more firearms, the -1 for cumulative offenses, and the +4 for transfer of firearms outside of the United States.[2]

---

[2] In the plea agreement, both defendant and the government reserved the right to argue for additional specific offense characteristics, adjustments, and departures. (Dkt. 107 ¶ 17.)

3

The government agrees with Probation's calculation of the total offense level.  First, the base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B) is correct.  The government agrees with Probation that defendant shipped firearms such as AR-15-style and AK-47-style firearms that were capable of accepting large capacity magazines, defined, in U.S.S.G. § 2K2.1 Application Note 2, as magazines that could accept more than 15 rounds of ammunition.  (Id. ¶¶ 35-36.)  In addition, defendant is a prohibited person because he is illegally in the United States.  (Id. ¶ 37.)

Second, the government agrees with Probation that defendant receives a nine-level increase under U.S.S.G. § 2K2.1(b)(1)(E) because he distributed more than 200 firearms, and because the cumulative offense level determined from the application of subsections (b)(1) through (b)(4) may not exceed 29.  (Id. ¶¶ 37-38.)

Third, the government agrees with Probation that defendant receives a four-level increase under U.S.S.G. § 2K2.1(b)(6)(A) because he shipped firearms to Mexico.  (Id. ¶¶ 39-40.)

Finally, the government agrees with Probation that a three-level reduction under U.S.S.G. § 3E1.1(b) is warranted, as defendant timely agreed to enter a plea of guilty as to counts one and eight of the First Superseding Indictment.  (Id. ¶¶ 50-51).  Thus, the government calculates a total offense level of **30.**

**B.   Criminal History Category**

The government agrees with the PSR's calculation of defendant's criminal history category as II, based on three criminal history points.  (Id. ¶¶ 58-62.)

    **C.    Sentencing Guidelines Range**

With a total offense level of 30 and a criminal history category of I, the advisory Guidelines range is 108 to 135 months' imprisonment. (Id. ¶ 98.)

**IV.    THE GOVERNMENT'S RECOMMENDED SENTENCE**

The government respectfully requests that the Court (i) adopt Probation's factual findings, (ii) adopt Probation's Guidelines calculations, and (iii) sentence defendant to 108 months' imprisonment, three years of supervised release, and a $100 special assessment. Such a sentence would be sufficient, but not greater than necessary, to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

Defendant's conduct was serious. He and his co-conspirators built and shipped a large number of firearms -- at least 200 -- to Mexico. At least some of these firearms were especially dangerous in that they were capable of accepting large capacity magazines. Defendant profited from manufacturing and distributing these firearms, and personally was involved in negotiating the sales. Finally, he distributed these dangerous weapons despite knowing that his conduct was unlawful and despite knowing that he had no legal status in the United States.

The Court also must consider any mitigating factors that exist in defendant's personal history and characteristics. See 18 U.S.C. § 3553(a)(1). Here, the government acknowledges that mitigating factors exist in defendant's personal history and characteristics, including that defendant experienced poverty, hunger, and physical abuse as a child. (PSR ¶¶ 70-74.) Further, defendant has maintained a 23-year marriage with his wife and co-defendant, with whom he

shares four children, including two minor children. (Id. ¶ 76.) Defendant has maintained employment for most of his life, mainly as an agricultural field worker. (Id. ¶ 88.) Finally, defendant suffers from an addiction to controlled substances, and in particular, methamphetamine. (Id. ¶ 86.)

Last, under the totality of circumstances, the government's recommendation promotes respect for the law, deters defendant specifically and others generally, and protects the public. See 18 U.S.C. §§ 3553(a)(2)(A)-(C). Accordingly, balancing the aggravating and mitigating factors, the totality of circumstances support imposing a low-end sentence of 108 months' imprisonment.

The Court should impose a three-year term of supervised release in light of the seriousness of the offense and the possible need for substance abuse and mental health treatment. These factors, combined with the additional considerations noted above, make clear that a three-year period of supervision is necessary to provide the defendant with oversight, supervision, and support as he transitions back into the community after his period of incarceration. See United States v. Johnson, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life."); S. Rep. No. 98-225, at 124 (1983) (describing the "primary goal" of supervised release as providing "rehabilitation").

**V.   CONCLUSION**

For the foregoing reasons, the Court should impose a low-end sentence of 108 months' imprisonment, three years' supervised release, and a $100 special assessment.

6